**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES LANDON,

|  |  |  |
|---|---|---|
| | Plaintiff, | 3:25-cv-795 |
| | | (ECC/ML) |
| v. | | |
| | | |

VILLAGE OF CAYUGA HEIGHTS and
CHIEF JERRY L. WRIGHT,

Defendants.

---

Patrick Jennings, *Esq.*, *for Plaintiff*
Stacey E. Trien, *Esq.*, *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff James Landon filed this action against Defendants the Village of Cayuga Heights (Cayuga Heights) and Cayuga Heights Police Chief, Jerry Wright (Wright) alleging violations of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and New York state laws arising out of his employment as a Cayuga Heights police officer after he suffered an injury while working. Complaint (Compl.), Dkt. No. 1. Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint. Dkt. No. 6. The motion is fully briefed. *See* Dkt. Nos. 6-4, 11, 12. For the following reasons, the motion to dismiss is granted.

### I.    FACTS

On March 16, 2022, Plaintiff, who was a Cayuga Heights police officer, "sustained a severe injury to his right wrist during a physical altercation with a suspect," while he was "responding to a call." Compl. ¶¶ 7, 8. This injury, a "Triangular Fibrocartilage Complex Tear," "resulted in significant physical pain and functional impairment," and Plaintiff "was placed on medical leave

for 19 months." *Id.* at ¶¶ 9–10, 12.    Plaintiff "diligently pursued treatment, including physical therapy and consultations with specialists, but has not regained full functionality." *Id.* at ¶ 12.

"In May and early June of 2022," Plaintiff provided Wright "with near daily updates on his status and the results of medical appointments where he hoped to receive clearance to return to work on light duty status." Compl. ¶ 21.  On June 9, 2022, Wright "sent a message to the Plaintiff calling into question the legitimacy of the Plaintiff's injuries, the information he was receiving from his doctors, and the efforts the Plaintiff was making to return to work." *Id.* at ¶ 22. "Throughout Plaintiff's entire recovery process," Wright "engaged in persistent and repetitive questioning regarding medical updates, despite being provided timely and accurate information," and "questioned the legitimacy of Plaintiff's injury, the necessity of medical treatments, and the recommendations of medical professionals." *Id.* at ¶¶ 24, 26.

In "the Spring of 2023," the Cayuga Heights mayor "began voicing her disapproval of the fact that the Plaintiff was entitled to benefits for longevity, education, rotating shift pay and other contractually negotiated terms." Compl. ¶¶ 33, 97.  "In response to these concerns," the police department, the police union, and Cayuga Heights made "significant changes" to the terms of the next collective bargaining agreement (CBA) affecting police officers "who suffered line of duty injuries while serving the village" including the addition of this language:  "'Rotating shift pay and holiday pay will also be pro-rated and not paid to an employee while on [disability-related leave] and will either be paid or deducted from the following June or December payments upon return to active duty." *Id.* at ¶ 34.  Plaintiff was the only member of the police department "impacted by this change to the CBA." *Id.* at ¶ 35.  Plaintiff "was not notified by the union," the police department, or Cayuga Heights "about the changes which were made to the contract while he was out on . . . disability related leave." *Id.*

"While on extended medical leave, Plaintiff missed the opportunity to take the Sergeant's exam," because he "was not properly notified of this examination nor provided with an opportunity to participate in the promotional process."  Compl. ¶¶ 37–38.

In September 2023, Wright ordered Plaintiff to "to turn in his badge and building key." Compl. ¶ 39.  In approximately October 2023, Plaintiff returned to work, and he "was assigned exclusively to the 3:00–11:00 PM shift, a departure from the department's longstanding practice of maintaining a rotating schedule."  *Id.* at ¶ 40.  Defendants also removed Plaintiff from the holiday schedule, a source of overtime compensation, "and refused to provide him with overtime and opportunities to cover additional shifts."  *Id.* at ¶ 42.  On July 30, 2024, Plaintiff formally requested that he be removed from the 3:00-11:00 PM shift, and Wright "summarily denied" his request.  *Id.* at ¶¶ 43–44.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).  A court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  However, "the tenet that a

3

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.     DISCUSSION

The Complaint asserts three claims under 42 U.S.C. § 1983: (1) violation of Plaintiff's "Fifth and Fourteenth Amendment[]" procedural due process rights against Cayuga Heights, by "depriv[ing] . . . Plaintiff of contractual rights and benefits to which he was entitled under a collective bargaining agreement" and "long recognized protections afforded to him under the laws of the State of New York,"  Compl. at ¶¶ 62–64; (2) violation of Plaintiff's Fifth and Fourteenth Amendment[]" equal protection rights against Cayuga Heights, by discriminating against him as a class of one through "arbitrarily and intentionally refus[ing] to apply or enforce the provisions of the CBA as they pertain to Plaintiff," *id.* at ¶¶ 68, 72; and (3) the same due process and equal protection violations of the "Fifth and Fourteenth Amendments" against Defendant Wright, *id.* at ¶¶ 78–80.  In sum, the Complaint asserts two theories of constitutional injury: a procedural due process theory and a class-of-one equal protection theory.

### A.     Fifth Amendment Claims

Defendants argue that the Fifth Amendment claims should be dismissed because the Fifth Amendment Due Process Clause applies only to the federal government.    Defendants' Memorandum of Law (Def. Mem.) at 11–12, 20,[1] Dkt. No. 6-4.  Plaintiff does not seem to take a contrary position. *See generally* Plaintiff's Response Memorandum of Law (Pl. Mem.), Dkt. No. 11.

"The Fifth Amendment's Due Process Clause applies only to the federal government, and

---

[1] Unless otherwise noted, citations to page numbers refer to pagination generated by the Court's ECF system.

not to state or municipal actors." *Conn. Citizens Def. League, Inc. v. Thody,* 664 F. Supp. 3d 235, 249 (D. Conn. 2023) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'") , *aff'd* No. 23-724-CV, 2024 WL 1777707 (2d Cir. Jan. 17, 2024); *see also Corbia v. Port Chester-Rye Union Free School Dist.*, No. 23-cv-8227, 2024 WL 4987035, at *7 (S.D.N.Y. Dec. 5, 2024) ("Where, as here, no defendant is a federal actor, the Due Process Clause of the Fifth Amendment is not applicable.") (citing *Conn. Citizens Def. League*, 664 F. Supp. 3d at 249 and *Burgess v. Cnty. of Rensselaer,* No. 03-cv-542 (NPM/RFT), 2006 WL 3729750, at *5 (N.D.N.Y. Dec. 18, 2006)).

Here, the Complaint does not assert any actions by the federal government. Defendants' motion to dismiss is therefore granted to the extent that the Complaint asserts violations of the Fifth Amendment.

### B.    Procedural Due Process

Defendants argue that Plaintiff failed to state claims based on violations of his procedural due process rights because he failed to allege that he was deprived of a cognizable interest. Def. Mem. at 12–14. Plaintiff responds that he had cognizable property interests in "his employment benefits and in career advancement" under state law and the CBA. Pl. Mem. at 7.

To state a procedural due process claim, a plaintiff must allege "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." *Baltas v. Maiga*, 119 F.4th 255, 263 (2d Cir. 2024) (quoting *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quoting U.S. Const. amend. XIV, § 1)). Cognizable "property interests 'are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law.'" *Winston v. City of New York*, 759 F.2d 242, 247 (2d Cir. 1985) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  As a result, state statutory schemes can create cognizable property interests. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (concluding that due process is required for the termination of welfare benefits).  A public-sector collective bargaining agreement can also create a cognizable property interest.  *Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 192 (E.D.N.Y. 2006); *see Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (concluding that plaintiff "had a property interest in his employment that qualified for the protections of procedural due process" where the collective bargaining agreement guaranteed that plaintiff "could not be fired without just cause").

Not every contractual benefit conferred in a collective bargaining agreement, however, is a cognizable property interest.  *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991) ("It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a [state actor] into a federal claim) (quoting *San Bernardino Physicians' Servs. Med. Grp. v. Cnty. of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir. 1987)); *see Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) ("A contract dispute . . . does not give rise to a cause of action under section 1983").

"Generally, the types of contractual benefits that are protected by the Due Process Clause are those bearing a quality or character of 'extreme dependence,' as in the case of welfare benefits, or 'permanence,' as in the case of loss of public employment." *Donohue v. New York*, 347 F. Supp. 3d 110, 138 (N.D.N.Y. 2018) (quoting *Dohrmann-Gallik v. Lakeland Cent. Sch. Dist.*, No. 14-cv-4397, 2015 WL 4557373, at *3 (S.D.N.Y. July 27, 2015)), *aff'd sub nom. Donohue v. Hochul*, 32 F.4th 200 (2d Cir. 2022)); *see Henneberger*, 465 F. Supp. 2d at 193 (concluding that

"the alleged deprivation in this case does not amount to a deprivation of a status characterized either by 'extreme dependence' or 'permanence' under [*S&D Maintenance*]") (quoting *S&D Maint. Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir. 1988)).  Accordingly, some collective bargaining benefits have not been recognized as property interests including "compensation levels and wage increases," *Henneberger*, 465 F. Supp. 2d at 192–93, "line of duty sick leave," *Danese v. Knox*, 827 F. Supp. 185, 193 (S.D.N.Y. 1993), and an increase in retirement benefits, *Costello*, 811 F.2d at 784.

Here, the Complaint refers to "protections afforded" to Plaintiff "under the laws of the State of New York," but the Complaint does not identify any specific laws.  Compl. ¶ 64.  This vague and conclusory statement is not sufficient to allege a statutory source for a property interest.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

The Complaint also alleges that Defendants deprived him of "contractual rights and benefits to which he was entitled under" the CBA.  Compl. ¶ 63.  Plaintiff alleges that he was deprived of benefits for "longevity, rotating shift differential, education and other negotiated pay benefits while on disability-related leave," and, although it is not clear from the Complaint, potentially broader scheduling benefits.  *See* Compl. ¶¶ 34, 41–42, 54–57.  Such benefits however, at least as currently pled, do not "implicate the great objects of the Fourteenth Amendment." *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 454 (S.D.N.Y. 2010) (quoting *Boyd v.*

---

[2] Although Plaintiff lists several state statutes in his memorandum of law, Pl. Mem. at 7, 18, those assertions are not considered because they are not part of the Complaint.  *See Catalano v. MarineMax*, 690 F. Supp. 3d 123, 134 (E.D.N.Y. 2023) (explaining that an assertion in a brief, "which is not in the Amended Complaint, is not properly before the Court").

*Schembri,* No. 94-cv-7119, 1997 WL 466539, at *3 (S.D.N.Y. Aug. 13, 1997) (additional citations omitted), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012). The accrual of these benefits does not have the quality or character of "extreme dependence" or "permanence" necessary to create a cognizable property interest from a collective bargaining agreement alone. Indeed, courts have held that similar benefits for "compensation levels and wage increases," "line of duty sick leave," and increases in retirement benefits, are not cognizable property interests. *Henneberger*, 465 F. Supp. 2d at 192–93; *Danese*, 827 F. Supp. at 193, *Costello*, 811 F.2d at 784. Accordingly, the Complaint does not state claims for the violation of Plaintiff's procedural due process rights, and Defendants' motion to dismiss is granted on those claims.

## C.    Class-of-One Equal Protection

Regarding Plaintiff's class-of-one equal protection claims, Defendants argue that Plaintiff has failed to state claims because such claims may not be brought by government employees in the employment context. Def. Mem. at 18–19. Plaintiff responds that rule does not apply here because he did not allege "an injury due to *discretionary decision making*." Pl. Mem. at 14.

"[A] 'class-of-one' theory of equal protection has no place in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008); *see also Naumovski v. Norris*, 934 F.3d 200, 219 n.73 (2d Cir. 2019) ("Nor could [the plaintiff] have challenged such discrimination on a "class of one" theory, simply on the basis that her termination was individually arbitrary.") (citing *Engquist*, 553 U.S. at 591). Plaintiff's attempts to distinguish *Engquist* are not persuasive. In *Engquist,* the Supreme Court noted the significance of "a clear standard against which departures, even for a single plaintiff, could be readily assessed" in class-of-one claims, but that statement occurred in the context of describing how "some forms of state action . . . by their nature involve discretionary decision making," seen "most clearly in the employment context."

*Engquist*, 553 U.S. at 603–04. In addition, anticipating claims like Plaintiff's, the Supreme Court stated that allowing public employees to bring class-of-one claims based on loss of employment would mean that "any personnel action, such as promotion, salary, or work assignments" could "become the basis for an equal protection complaint," and that would "impermissibly 'constitutionalize the employee grievance.'" *Id.* at 608 (quoting *Connick,* 461 U.S. 138, 154 (1983)). Plaintiff's claim relies on the adverse personnel actions that concerned the Supreme Court in *Engquist*.

Accordingly, the Complaint does not state claims for violation of Plaintiff's equal protection rights, and Defendants' motion to dismiss is granted for the equal protection claims.

### D.    Supplemental Jurisdiction

The remaining claims are all claims under New York law. "A district court may decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction." *Allen v. City of New York*, No. 24-2589-CV, 2025 WL 3152723, at *2 (2d Cir. Nov. 12, 2025) (citing 28 U.S.C. § 1367(c)(3)). Indeed, the district court "may (and indeed ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)). "When deciding whether to exercise jurisdiction over pendent state law claims, courts weigh the factors of 'judicial economy, convenience, fairness, and comity.'" *Allen,* 2025 WL 3152723, at *2 (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988), *abrogated on other grounds by Royal Canin*, 604 U.S. at 39–41); *see also Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Cohill,* 484 U.S. at 350 n.7).

After balancing all of the relevant factors, the Court declines to exercise supplemental jurisdiction, and Plaintiff's state-law claims are dismissed without prejudice. Plaintiff's Complaint is therefore dismissed.

### IV.    LEAVE TO AMEND

Plaintiff seeks, in the alternative, to amend his complaint. Pl. Mem. at 24. Under Federal Rule of Civil Procedure 15(a)(2) a court should "freely give leave [to amend] when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), with exceptions not relevant here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (citation omitted).

Here, Plaintiff may not amend his Fifth Amendment claims or assert another class-of-one claim because amendment would be futile. With those exceptions, Plaintiff may file an amended complaint within thirty days. If Plaintiff fails to file an amended complaint within the thirty-day deadline, the Clerk of the Court is respectfully directed to close this case without further order from the Court. Any amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citation omitted).

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, Dkt. No. 6, is **GRANTED**; it is further

**ORDERED** that Plaintiff's Fifth Amendment claims and Fourteenth Amendment class-of-one equal protection claims are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** that Plaintiff's Fourteenth Amendment procedural due process claims are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED** that Plaintiff is granted leave to amend to the extent authorized in this Memorandum-Decision and Order; it is further

**ORDERED** that any amended complaint must be filed within thirty days of the date of this Memorandum-Decision and Order; and it is further

**ORDERED** that, if Plaintiff fails to file an amended complaint within the thirty-day deadline, the Clerk of the Court is respectfully directed to close this case without further order from the Court.

**IT IS SO ORDERED.**

Dated: March 11, 2026

_____
Elizabeth C. Coombe
U.S. District Judge

11